THE STATE, EX REL. STANLEY ET AL., *v.* CITY COUNCIL OF
AVON ET AL.

(Cite as State, ex rel. Stanley, v.
City Council of Avon (1974), 39 Ohio St. 2d 150.]

(No. 74-28—Decided July 17, 1974.)

*Messrs. Schulman & Schulman* and *Mr. Milt Schulman*, for relators.

*Mr. John F. Mackin*, law director, for respondents.

*Per Curiam.* There is no dispute that Ordinance No. 38-73 was passed and signed on November 1, 1973. Nor is it disputed that the referendum petition was duly and timely submitted within 30 days of passage of the ordinance. The referendum petition did, in fact, specify that the subject ordinance be "submitted to the electors of such city for

their approval or rejection at a special election to be held in compliance with Article 10, Section 2 of the Charter, city of Avon." Section 2, Article 10 of the charter, requires the signatures of no less than ten percent (10%) of the total electors voting at the last regular municipal election, and Section 10, Article 10 of the charter, requires signatures of twenty percent (20%) of electors for a special election.

As contrasted with the Avon Charter requirements relative to a referendum, Section 5, Article XVIII of the Ohio Constitution, provides that "any municipality proceeding to acquire, construct, own, lease or operate a public utility, or to contract with any person or company therefor, shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage." This constitutional provision then states that "if within said thirty days a petition signed by ten percentum of the electors of the municipality shall be filed with the executive authority thereof demanding a referendum on such ordinance it shall not take effect until submitted to the electors and approved by a majority of those voting thereon. The submission of any such question shall be governed by all the provisions of Section 8 of this Article * * *."

The revelant portion of Section 8, Article XVIII of the Constitution, mandates that "the ordinance providing for the submission of such question shall * * * be submitted to the electors at the next regular municipal election if one shall occur not less than sixty nor more than one hundred and twenty days after its passage; otherwise it shall provide for the submission of the question at a special election to be called and held within the time aforesaid."

Against that background, the first crucial question to be decided is whether the referendum petition contained sufficient qualified signatures under either the Avon Charter or the Constitution.

The uncontroverted facts pertaining to the referendum petition establish that the total voter registration of the city of Avon, as of November 6, 1973, was 3,198, and the total city vote on November 6, 1973, was 1,450. There were

458 signatures on the referendum petition, and 238 were accepted as bona-fide signatures of qualified electors who had voted at the last Avon municipal election, Bona-fide signatures of 170 persons who were qualified to vote at the last election, but had not done so, were invalidated. The remaining signatures were invalidated for other reasons not cogent here. Had the 170 disqualified signatures been accepted, the total of qualified signatures on the referendum petition would be 408, which would constitute an excess of ten percent (10%) of the 3,198 total registered voters and would be in excess of twenty percent (20%) of the 1,450 electors who had actually voted in the last municipal election on November 6, 1973. The evidence reflects that such disqualification of otherwise qualified electors was done because of a misreading of Section 2, Article 10 of the Avon Charter, which requires signatures of "ten (10%) percent of the total electors voting at the last regular municipal election." That language clearly provides that the ten-percent signature requirement is *of the total electors voting* at the last municipal election. There is no language in either the Avon Charter or the Ohio Constitution which justifies a disqualification of signatures of registered voters simply because they had not voted in the last municipal election.

The 170 disqualified signatures were qualified and should have been counted. Those 170 signatures, together with 238 signatures which were accepted, provided sufficient qualified signatures, under either constitutional provision or the Avon Charter, to activate the referendum petition. Thus, the question raised by respondents, as to conflict between the charter and constitutional requirements as to the number of signatures required, is moot. Therefore, the fact that the referendum petition sought application of the Avon Charter, rather than the Constitution, is irrelevant.

Respondents also contend that Ordinance No. 38-73 is not amenable to referendum. They argue that, since Ordinance No. 465-69, adopted in 1969, was the original in-

itiating ordinance respecting such utility service, any referendum should have been directed to Ordinance No. 465-69. However, the evidence establishes that, although ordinances were adopted in 1969 and 1971 respecting waste water treatment facilities, those ordinances concerned only exploratory or feasibility studies respecting such service. The 1969 ordinance, for example, authorized a contract for a preliminary engineering report relative to regional facilities for waste water treatment. Although preliminary steps may have been taken by the city of Avon looking to participation in such regional utility operation, the evidence is that all such preliminary municipal legislation, and any contract thereunder, were for planning purposes and did not commit the city to the ultimate objective which was participation in a regional utility system. The authorization for the city to participate in a cooperative agreement for supply of services for waste water facilities is Ordinance No. 38-73, which is the subject of this referendum.

Ordinance No. 38-73 is not tentative; it unequivocally authorizes the city to enter into a utility contract, and, as such, falls within the contemplation of Section 5, Article XVIII of the Ohio Constitution, and is the proper subject of referendum.

As to relators' motion to strike respondents' counterclaim for damages, the evidence submitted at the hearing is insufficient to support the counterclaim. Therefore, apart from any consideration as to the propriety of a counterclaim in an action in mandamus, the counterclaim is dismissed.

For the foregoing reasons, respondents are ordered to provide, by ordinance, for the submission of Ordinance No. 38-73 to the electors of the city of Avon, for approval or rejection, at an election pursuant to the provisions of Section 8, Article XVIII of the Ohio Constitution.

*Writ allowed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.